## HILL vs. AVERETT.

[BILL IN EQUITY FOR ABATEMENT OF OBSTRUCTION OF PUBLIC ROAD—DISSOLUTION
OF INJUNCTION ON ANSWER.]

1. *Abatement of obstruction refused, because complainant had resorted to unfair means to compel travel through private way to his ferry.*—H., being the owner of a ferry across the Chattahoochie river, and having opened a private way leading from his ferry into the public road on this side of the river, filed a bill against A. to abate an obstruction erected across said road. A. answered, averring that H. had previously obstructed the public road on the Georgia side of the river, so as to divert public travel from defendant's ferry to his own, and that the obstruction complained of had straightened the public road, placed it on better ground, and been accepted by the overseer of the road: *Held,* that the injunction was properly dissolved on the allegations of the answer.

APPEAL from the Chancery Court of Barbour.
Heard before the Hon. WADE KEYES.

THIS bill was filed by Allen W. Hill against Matthew Averett, alleging, that complainant, being the owner of certain lands lying on both sides of the Chattahoochie river at Florence, Georgia, was authorized by an act of the legislature of that State to establish a ferry across said river at that point, and had his ferry established and in successful operation ; that there has been for many years a public road, duly authorized and opened by the Commissioners' Court of Barbour county, Alabama, running between the lands of complainant and one Williams, on the one side, and the lands of Matthew Averett, on the other, and leading to said ferry ; that said Averett has recently erected an obstruction across said public road, commencing on his own lands, and extending across said road to the lands of said Williams ; that this obstruction changes said public road from the direction in which it was authorized and accustomed to run, and thereby diverted the public travel from complainant's ferry, and rendered his chartered privilege entirely worthless to him ; that Averett has no chartered privilege granted to him by the legislature of Georgia to erect either a bridge or ferry

across said river at Florence, and that complainant's is the only chartered ferry at or near that point; that Averett erected said obstruction with a knowledge of complainant's chartered privilege, and with the intent to render the same valueless to him; and that he is now proceeding in said Commissioners' Court of Barbour, for an order to legalize said obstruction and change of the public road. The prayer of the bill is, for an abatement of the obstruction, an injunction against further proceedings in the Commissioners' Court, and for general relief.

The defendant answered the bill, admitting that there was, and for many years had been, a public road in Barbour county, duly authorized and opened by the Commissioners' Court, running between his lands and those of complainant and Williams, and terminating at or near the place on said river where a chartered bridge formerly stood, which fell down and was destroyed about eleven years ago; alleging that complainant's ferry was over one-quarter of a mile from the point where said road terminated, and that there was no road opened by authority of said court, leading from complainant's ferry into this public road. He alleged, also, that at a regular term of said court, held in May, 1848, he was authorized to erect a toll-gate across said public road at its termination on said river, and gave bond and security, as required by the order; that all persons were prohibited by said court from interfering in any manner with his privileges, within one mile of his toll-gate up and down said river; that at the time said bridge fell down, there being no means left for persons to cross said river at Florence, he made a contract with one H. H. Jernigan, who was the agent of the company to whom the lands on which Florence was built belonged, for the establishment of a ferry across the river at that place; that ever since that time he has kept a good ferryboat and competent ferrymen at his ferry, and has kept the same in good order and repair; that the road leading from the Georgia side of said river to his ferry has been in the constant and uninterrupted use and possession of the public for more than twenty years, and the United States mail has been carried over it for more than eleven years; that complainant, a short time before the filing of his bill, obstructed said road,

by cutting ditches across it, &c., and thereby diverted the public travel to his own ferry ; that he also, with the view of interfering with respondent's rights, purchased a tract of land on the Alabama side of the river, through which, without any order or authority from any court in this State, he has lately opened a private road, leading from his ferry to the public road within a half mile of respondent's toll-gate ; that this road runs over low, flat, muddy lands, and compels the public to travel a much worse road, and to go about a mile further · to get to Florence, than they would be obliged to go by crossing at respondent's ferry. He further states, "that for the purpose of securing and protecting his rights, respondent commenced, a little west of the point where the lands of complainant, respondent, and said Williams cornered, to throw said public road south of its original course, and caused it to run parallel with the old road, until it reached the old road immediately below the point where it turned down the river to respondent's ferry, leaving a strip of land between the old and new road not more than six or eight feet wide, and leaving the old line of fence running along said strip between said roads ; and at the point where said road leaves the old road, respondent erected a fence across said old road. Respondent further avers, that said public road, as it has been made to run by him, has been rendered more convenient to the public than the old road, not only because it passes over ground equally as good as the old road, but because it shortens the distance to the point where the old road terminates at the river, and throws said road in a straighter line from the point where said new road leaves the old one to respondent's ferry." Respondent avers, also, that said fence is erected entirely on his own land ; that the overseer of said public road, appointed by the Commissioners' Court, pronounces the new road a nearer and better road than the old one, sanctions respondent's act in opening it, and has received it in place of the old road.

The chancellor dissolved the injunction on the coming in of this answer, and his action is now assigned for error.

LEWIS L. CATO, for the appellant :

1. The injunction should not have been dissolved, because

the equity of the bill is not denied by the answer.—Moore v. Barclay, 16 Ala. 158; Calhoun v. Cozens, 3 *ib*. 503.

2. The injury to the complainant's ferry is the same, whether the public road leads to it or not. Admitting that the road does not lead to it, still the bill shows the injury, and the answer admits enough to constitute the equity; admitting a public road, his fencing it, and the injury to complainant.—Barney v. Earle, 13 Ala. 106.

3. On motion to dissolve an injunction, whenever it appears that the complainant was entitled to an injunction at the time of obtaining it, but there still remains a dispute between the parties, the injunction is invariably continued until final hearing, or until further order.—Lynch v. Colegate, 2 Har. & John. 36.

4. The Commissioners' Court of Barbour county had no jurisdiction to license the defendant's toll-gate. Their authority is where the water-course is in their county.—Clay's Digest, p. 513, §§ 25 to 32.

5. A private person has no right, without a charter, to establish a ferry on a public highway; and the defendant had no legal right, under his contract with Jernigan for his ferry, to be affected by complainant's ferry.

6. If the complainant obstructed the public road in Georgia, he is amenable to the laws of Georgia; and this furnishes no excuse for the defendant's obstruction of the road in Alabama.

JAMES L. PUGH, *contra:*

1. If the bill has any equity, it is contained in the allegation that a public road, leading to complainant's ferry, has been obstructed, and the public thereby prevented from crossing at his ferry. The answer denies that there is any public road leading to his ferry, and alleges that he has himself changed the public road over worse ground, and increased the distance to Florence. If he has forced the public out of the highway on the Georgia side, by cutting ditches and felling trees across it, to compel them to travel his private way and to cross at his ferry, he cannot, on the failure of such measures, ask relief of chancery. He presents himself in the attitude of a wrong-doer asking the court to sanction his own

wrongful act. He made the road run to his ferry by violating the law in changing it; and because he went on the Georgia side, and thus avoided an indictment, he now says there was no wrong in the act because he was out of the jurisdiction. He must come into equity with clean hands, and do equity, before he can ask it.

2. The Commissioners' Court had jurisdiction over the subject-matter, and the toll-gate was properly established.

3. The defendant's obstruction of the road was no injury to the public, since it was put on better ground, and made straighter.

4. The bill is not framed for relief against injury to the complainant from obstructing his private right of way.

CHILTON, C. J.—We think the chancellor correctly dissolved the injunction in this case. It appears from the answer, that Hill has been resorting to unfair means, on the Georgia side, to divert the travel from the defendant's ferry and toll-gate, and has opened a private way leading from his (Hill's) ferry to the public road on this side of the river. This private way has been interfered with, by the defendant's building a fence on his own land, and so changing the public road as to straighten it, and make it pass over better ground; and this change, it is averred, has been adopted by the overseer of the road, &c.

Now we think it nothing but reasonable, that Hill, the appellant, who has endeavored to compel persons traveling from the east side of the river, along this public road, to cross at his ferry, and thereby to pass around the ferry and toll-gate of respondent, should have a road leading from his ferry to the public road on this side of the river, *which he may be compelled to keep in repair*, and not one which he may open or close at pleasure, and for the repair of which he is in no way bound. If he desires to have a road to his ferry on the Alabama side, let him appeal to our Courts of Roads, &c.; and if it is proper he should have one as a private way, the law makes provision for it.—Code, §§ 1187, 1188. In that case, however, he must keep the road in repair, as well as compensate the " owners of land, over which the road passes, all damages resulting thereto from the establishment of such

road, to be assessed as in case of public roads."—Code, *supra*. Until he acquires some right of this kind, and places himself under some obligation to the public to repair the road—in other words, until either a public road or private way is established by law, we do not think the chancellor, in a case *the exigencies of which make no stronger appeal for the exercise of preventive justice than the present*, should interpose his extraordinary powers and enjoin, or order the fence of a coterminous land proprietor to be taken down, because it interferes with such way. We will not say that there is no case where the chancellor can remove an impediment or obstruction in a private way which is not established by law : we confine our opinion to the case before us, as disclosed by the record.

Let the decree be affirmed.